UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.: 26-9427

CARDSMITHS, LLC

Plaintiff,

v.

MANTLE I.P. HOLDINGS, LTD., MAJOR LEAGUE ALUMNI MARKETING, INC., DANNY MANTLE, WILLIAM MANTLE, MM7 MANAGEMENT, L.L.C., DOROTHY M. WEBER, and HERBSMAN HAFER WEBER & FRISCH, LLP,

JURY TRIAL DEMANDED

Defendants.
_____________________________________/

## COMPLAINT

Plaintiff Cardsmiths, LLC ("Cardsmiths") files this Complaint against Defendants Mantle I.P. Holdings, Ltd. ("Mantle IP"), Major League Alumni Marketing, Inc. ("MLAM"), Danny Mantle, William Mantle, MM7 Management, L.L.C., Dorothy M. Weber, Esq. ("Weber"), and Herbsman Hafer Weber & Frisch, LLP (the "Weber Firm") (collectively, "Defendants"), and alleges as follows.

## NATURE OF THE ACTION

1. This case arises from Defendants' bad faith campaign to drive a lawful, constitutionally protected trading card and the set that it is part of out of the national retail market. Defendants pursued that campaign by sending threatening cease and desist letters to Cardsmiths' retailers — both before and after they filed suit — asserting trademark and publicity rights they do not hold and that do not reach the accused product.

2. The product at issue is a single artist rendered card in Cardsmiths' Currency Series 5 trading card set featuring 135 trading cards depicting influential figures, cultural artifacts, and currencies that have shaped the global economy. The trading card at issue, number 118 in the set, features an artist's rendition of the 1952 Topps Mickey Mantle trading card (the "Cardsmiths Mantle Card"). The Cardsmiths Mantle Card sits at the end of a chain of expression - a 1951 black and white photograph of Mickey Mantle was transformed by an artist into the painted 1952 Topps card, and an artist working on behalf of Cardsmiths then transformed the 1952 Topps card into an original composition: a stylized depiction of the historic card as a graded collectible within Cardsmiths' "Currency" theme.

3. Defendants did not test their claims in court before interfering with Cardsmiths' commercial relationships. Instead, months before filing suit, they wrote directly to Cardsmiths' retailers, including Best Buy and GameStop. They demanded that the retailers immediately stop advertising, promoting, and selling Cardsmiths' products, and they threatened litigation, disgorgement, and "litigation holds" against the retailers themselves.

4. What Defendants sought through those letters was something only a court can grant: a market wide order halting the sale of Cardsmiths' product.

5. Defendants did not stop when they sued Cardsmiths. After filing this action, they kept sending the same kind of letters to still more retailers, none of them parties to the lawsuit. Those letters attached a copy of their complaint and demanded that the retailers stop selling Cardsmiths' product and account for their sales. These letters were an effort to coerce. Because the letters were directed to non-parties and asserted rights Defendants knew they did not possess against a plainly protected expressive work, no privilege shields them. Defendants' conduct has cost Cardsmiths millions of dollars, and Cardsmiths is entitled to relief.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

## THE PARTIES

6. Plaintiff Cardsmiths, LLC is a limited liability company organized under the laws of the State of Florida with its principal place of business in Gilberts, Illinois. Cardsmiths designs and sells premium trading cards. The members of Cardsmiths are Kung Pao, LLC and Catalyst Sales Group, LLC. The sole member of Kung Pao, LLC is a citizen of Nevada, and the members of Catalyst Sales Group, LLC are citizens of Florida. For purposes of diversity, Cardsmiths is therefore a citizen of Nevada and Florida.

7. Defendant Mantle I.P. Holdings, Ltd. is a limited partnership organized under the laws of the State of Texas, with its principal place of business in Plano, Texas. Mantle IP holds itself out as the owner of certain "Mickey Mantle" and "The Mick" trademark registrations and as successor in interest to the Estate of Mickey Mantle. The asserted rights trace to the Mickey Charles Mantle Marital Trust II (the "Mantle Trust"). Mantle IP authorized the conduct alleged in this Complaint.

8. Defendants Danny Mantle and William Mantle are Texas citizens. Together with MM7 Management, L.L.C., they are the members, owners, and principals of Mantle IP. The members of MM7 Management, L.L.C. are citizens of Texas. Danny Mantle, William Mantle, and MM7 Management, L.L.C. (the "Mantle Principals") directed, authorized, and participated in the conduct alleged in this Complaint.

9. Defendant Major League Alumni Marketing, Inc. is a corporation with its principal place of business in Colorado Springs, Colorado. It holds itself out as the authorized and exclusive licensing agent for Mantle IP. MLAM is wholly owned by the Major League Baseball Players Alumni Association, a District of Columbia non-profit corporation. MLAM authorized and directed the conduct alleged in this Complaint.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

10. Defendant Dorothy M. Weber, Esq. is an attorney admitted to practice in the State of New York and a partner of the Weber Firm which is located at the street address 494 Eighth Avenue, Sixth Floor, New York, New York 10001. Weber authored and signed the cease and desist letters at issue. She is a citizen of New York.

11. Defendant Herbsman Hafer Weber & Frisch, LLP is a limited liability partnership with its principal place of business located at the street address 494 Eighth Avenue, Sixth Floor, New York, New York 10001. Weber is a limited partner of this Defendant. Weber authored and signed the cease and desist letters as an attorney with this lawfirm and using the letterhead of the firm. The partners of Herbsman Hafer Weber & Frisch, LLP are citizens of New York and New Jersey.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), and 28 U.S.C. §§ 2201–2202, because Cardsmiths seeks a declaratory judgment of non-infringement, non-dilution, and non-liability arising under the Lanham Act.

13. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a), independently of the federal claim and as an alternative basis for jurisdiction should the federal claim be dismissed, because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States. Cardsmiths, for diversity purposes, is a citizen of Nevada and Florida through its members Kung Pao, LLC and Catalyst Sales Group, LLC. Defendants are citizens of Texas, Colorado, the District of Columbia, New York, and New Jersey. Mantle IP is a citizen of Texas through its partners Danny Mantle, William Mantle, and MM7 Management, L.L.C., each a Texas citizen; MLAM is a citizen of Colorado and, through its sole member, the District of Columbia; and Weber and the Weber Firm are citizens of New York and New Jersey. No Defendant shares citizenship with Cardsmiths, so complete diversity exists.

14. This Court has supplemental jurisdiction over Cardsmiths' state-law claims under 28 U.S.C. § 1367(a).

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Weber and the Weber Firm reside here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Cardsmiths' claims occurred here, including the drafting and transmission of the cease and desist letters at issue. Venue in this District is further supported by the pendency of the related action described below, Mantle I.P. Holdings, Ltd. and Major League Alumni Marketing, Inc. v. Cardsmiths, LLC, et al., No. 1:26-cv-08344 (VSB)(RWL), which arises from the same controversy and the same operative facts, such that litigating Cardsmiths' claims in this District serves judicial economy and the convenience of the parties and witnesses.

16. This action is related to Mantle I.P. Holdings, Ltd. and Major League Alumni Marketing, Inc. v. Cardsmiths, LLC, Toynk Toys, L.L.C., Steven Loney, et al., No. 1:26-cv-08344 (VSB)(RWL), now pending in this District (the "Mantle Action"). A Related Case Statement is being filed concurrently.

## FACTUAL ALLEGATIONS

### A. The Cardsmiths Mantle Card is one of 135 cards and an original artistic work at the end of a chain of expression.

17. Cardsmiths designs, produces, and sells premium collectible trading cards. Its Currency Series 5 set comprises 135 trading cards featuring original designs by various artists celebrating the influential figures, cultural artifacts, currencies, and viral memes that have shaped the global economy. The Cardsmiths Mantle Card is part of the set.

18. A depiction of a portion of the Mantle card also appears on the packaging of some of the set's products. Where it appears, it is one element among the set's other artwork, surrounded


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

by the "Currency" branding and the series' finance, cryptocurrency, and economy themed designs. It does not stand alone as the identity of the product.

19. The Cardsmiths Mantle Card is the product of successive artistic transformations. It began with a 1951 black and white photograph of Mickey Mantle in a New York Yankees uniform with a bat resting on his shoulder. A Topps trading card artist used that photograph as a reference to create the painted, colorized 1952 Topps card. Cardsmiths' artist then used the 1952 Topps card as a reference to create an original composition for Currency Series 5 of the Cardsmiths Mantle Card.

20. The 1952 Topps card is itself a transformation of the 1951 photograph, not a copy of it. The photograph is black and white, while the card is rendered in full color with a blue cap and a solid teal background. The neutral studio backdrop of the photograph gives way to a flat color field. The waist-up framing of the photograph, including the player's elbow pad, is cropped to a head and shoulders view. And the card adds graphic elements the photograph lacks, including a Yankees emblem, a name banner reading "MICKEY MANTLE," and a facsimile autograph.

21. The Cardsmiths Mantle Card is likewise a transformation of the 1952 Topps card, not a reproduction of it. Among the many differences:

(a) The Cardsmiths Mantle Card does not depict a bare 1952 card. It depicts the 1952 card as a graded, encapsulated collectible inside a grading holder, bearing a grading label ("1952 TOPPS MICKEY MANTLE #311 EX-MT 10"), a certification number (8675309), a barcode, a "CARDSMITHS" label, and a QR code.

(b) It depicts both the front and the back of the 1952 card as two separate, tilted, overlapping slabs on the front of the card in a three-dimensional still-life composition with drop shadows, rather than a single flat card face.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

(c) Cardsmiths added an original design surround: a red cross-hatch border, a distressed black field, red baseball stitching, and blue and red stars.

(d) Cardsmiths added its own "Currency" series motif: a gold "CURRENCY" crypto-coin emblem on the front and back, a back field of binary "0/1" digits over images of coins and currency, and a "CURRENCY CRED" caption describing the historic card's record $12.6 million sale in 2022.

(e) The palette is entirely different. The 1952 card is teal dominant, while the Cardsmiths card is red, black, and gold. The Cardsmiths card also adds its own card number (#118), the Cardsmiths logo, the artist credit, and a 2025 Cardsmiths copyright notice.

(f) The 1952 image appears only as one small element, recontextualized within a 135-card set about the forces shaping the global economy.

(g) The 1951 photograph, the 1952 Topps card, and the Cardsmiths Currency Series 5 card are reproduced below, with the fronts in the left column and the backs in the right column:

| FRONT | BACK |
|---|---|
|  *Figure 1 — 1951 photograph of Mickey Mantle (front).* | *(Photograph; no reverse.)* |
|  *Figure 2 — 1952 Topps Mickey Mantle card (#311), front.* |  *Figure 2A — 1952 Topps card, back.* |







EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343




*Figure 3 — Cardsmiths Currency Series 5 card (#118), front.*




*Figure 3A — Cardsmiths Currency Series 5 card (#118), back.*

**B. The Currency Series 5 card is protected expression.**

22. The Cardsmiths Mantle Card is a work of visual art. It is an artist's original rendering that comments on, and recontextualizes, a historic American artifact and a legendary public figure. It proposes no commercial transaction beyond the sale of the expressive work itself, and selling it at retail does not diminish its status as protected expression.

23. The card is protected for several independent reasons. It is a transformative artistic work that adds significant new expression, meaning, and message to its source material, as the differences described above show. It depicts a historic public figure and a historic sporting artifact, both subjects of legitimate and widespread public interest, and expression of that kind lies at the core of what the First Amendment protects. The use of Mickey Mantle's depiction is artistically relevant to the underlying famous trading card about Mickey Mantle, and nothing on the card



EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

misrepresents that Mantle IP or MLAM is its source. To the contrary, the card is branded "Cardsmiths" and "Currency Series 5." On any of these grounds, the card is protected expression that cannot be enjoined or suppressed through trademark or right of publicity claims.

**C. Defendants' pre-litigation cease and desist campaign against Cardsmiths' retailers.**

24. Beginning in June 2026 and continuing before any lawsuit was filed, Weber and the Weber Firm, acting on behalf of Mantle IP and at the direction of the other Defendants, sent cease and desist letters aimed at Cardsmiths' retailers.

25. On July 7, 2026, months before filing suit, Weber and the Weber Firm sent a cease and desist letter to Best Buy Co., Inc., one of Cardsmiths' retailers. *See* Exhibit 1. This letter is representative, in form and substance, to the letters Defendants sent to big box retailers such as Best Buy and GameStop as well as smaller retailers before filing suit.

26. The pre-litigation letters made overwhelmingly commercial demands. The Best Buy letter directed Best Buy to "immediately cease all advertising, promoting, and selling of any of the Cardsmiths' Mantle Product," demanded "a full accounting of all sales," and recited, in a single sentence, that it "constitutes a formal litigation hold notice." The demand to stop selling, to account, and to disgorge was the letter's real object. The preservation language was a thin wrapper around a sweeping commercial ultimatum.

27. These letters were not isolated. Defendants sent substantially identical cease and desist demands to numerous other retailers that carried Cardsmiths' Currency Series 5, including large national and online retailers as well as small, independent, "mom-and-pop" card and hobby shops. The purpose of that campaign was not to resolve any bona fide dispute with those retailers, many of whom were small merchants in no position to evaluate Defendants' legal claims. It was to frighten them into pulling Cardsmiths' product from their shelves. As to those small merchants in


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

particular, Defendants had no legitimate business purpose. The letters were calculated to intimidate, not to vindicate any genuine right.

**D. Defendants continued the campaign after filing suit, writing to still more non-party retailers.**

28. Filing the Mantle Action did not stop Defendants. After they filed their original complaint on September 24, 2026, Weber and the Weber Firm, again on behalf of Mantle IP and at the direction of the other Defendants, continued to send cease and desist letters to Cardsmiths' retailers, none of which was a party to the Mantle Action. On October 8, 2026, they sent such a letter to Collector Store LLC, a small retailer located in Saint Peters, Missouri. *See* Exhibit 2. This letter is representative to the letters Defendants sent to numerous additional small and big-box retailers after they filed suit.

29. The October 8 letter followed the same playbook. It asserted that Collector Store was offering "Infringing Product" created and sold by Cardsmiths; it attached "a copy of our clients' lawsuit filed in the United States District Court, Southern District of New York"; it demanded "a full accounting of all sales" and "assurance that the sales of the Infringing Product will cease"; it told Collector Store that it was "a potential party to litigation" and issued a litigation-hold demand; and it set a four-day deadline to respond.

30. These post filing letters were not a step in litigating the Mantle Action. Collector Store and the other recipients were strangers to that action. The letters sought extrajudicial relief, a halt to sales and an accounting, directly from non-party retailers, using the pendency and the threat of the lawsuit as leverage to coerce them into abandoning Cardsmiths' product.



EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

**E. Defendants sought a private, self-help injunction outside the courts.**

31. Through these letters, Defendants tried to accomplish privately what only a court can order: a market wide halt to the advertising, promotion, and sale of Cardsmiths' product. A party that believes its intellectual property is being infringed may move for a preliminary injunction, but only by filing suit against the party it seeks to enjoin, showing a likelihood of success on the merits and irreparable harm, submitting to the court's scrutiny, posting security under Federal Rule of Civil Procedure 65(c), and giving the adverse party notice and an opportunity to be heard.

32. Defendants did none of that as to the retailers. Rather than seek a court order, they used threats of litigation, disgorgement, and "litigation holds" to pressure Cardsmiths' retailers into stopping sales, bypassing every safeguard the law imposes on that remedy. And although they eventually sued Cardsmiths, they never sued the retailers they had threatened. The letters were a coercive end run, not a prelude to any adjudication against those recipients.

**F. Defendants knew their threats were baseless.**

33. Defendants' letters accused Cardsmiths of "willful" trademark infringement and invoked Mantle IP's federal trademark registrations as the basis for their demands. Yet Defendants knew, or recklessly disregarded, that none of Mantle IP's registrations covers trading cards. The two word-mark registrations on which Mantle IP relies (Reg. Nos. 2,900,042 and 2,914,722) extend, in International Class 16, only to "books and magazines in the field of baseball trading cards" and "trading card albums." Those are publications about trading cards, and albums in which to keep them, not the cards themselves. The prosecution history makes the point even sharper. "[B]aseball cards (trading)" were claimed as goods in the 1998 application, but that claim was abandoned and deleted during prosecution and replaced with the narrower "books and magazines in the field of baseball trading cards" and "trading card albums," leaving Mantle IP with no



EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

registered trademark rights in trading cards at all. Weber and the Weber Firm had firsthand knowledge of this as they made submissions on the 1998 application.

34. Mantle IP's remaining registrations fare no better. Its "Mickey Mantle" and "The Mick" service-mark registrations cover only a baseball-themed website, museum services, and restaurant services, and reach no goods whatsoever, let alone trading cards. As a result, Defendants' letters which threatened federal trademark infringement arising from a trading card were baseless on the face of Defendants' own registrations.

35. Defendants also knew that the single card they objected to depicts the 1952 Topps card, a work owned by non-party Topps and its parent, Fanatics Collectibles.

36. Knowing all of this, Defendants still told Cardsmiths' retailers that Cardsmiths' product was infringing and unlawful, in order to pressure them into pulling a lawful, protected product from the market.

**G. Defendants' conduct is not privileged.**

37. Defendants' communications to Cardsmiths' retailers are not protected by any litigation or judicial proceedings privilege. The pre-litigation letters were sent before any litigation began, and they were directed not to an adversary in litigation but to third-party retailers who were strangers to any contemplated suit.

38. The post filing letters are equally unprivileged. The absolute judicial proceedings privilege protects statements made within a proceeding, among the parties, their counsel, the witnesses, and the court. It does not reach an attorney's out of court letters to non-parties who are strangers to the litigation. That Defendants attached a copy of their complaint does not change the analysis, because the letters were not sent to adjudicate any claim against the recipients but to coerce non-party retailers into ceasing sales and accounting for their revenue.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

39. Nor were the communications made in good faith or pertinent to the litigation. They asserted trademark and publicity rights Defendants knew they did not hold against an expressive work Defendants knew was protected, for the improper purpose of injuring Cardsmiths' retail relationships rather than resolving a bona fide dispute. Any qualified privilege that might otherwise attach to litigation related communications is therefore defeated.

40. For the same reasons, Defendants' conduct is not immunized petitioning activity. Letters to a competitor's retailers are not petitions to any court, and Defendants' assertions were objectively baseless and made in bad faith to interfere directly with Cardsmiths' business relationships.

**H. Defendants' conduct caused Cardsmiths substantial harm.**

41. Defendants' letters were intended to interfere with Cardsmiths' contracts and prospective business relationships with its retailers, and they did. As a direct and proximate result, Cardsmiths has suffered millions of dollars in damages, including product cancellations by retailers, product returns, and financial concessions Cardsmiths was forced to offer retailers and customers, along with lost sales, lost shelf space, and injury to its goodwill.

**Count I - Tortious Interference With Contract (Against All Defendants)**

42. Cardsmiths repeats and realleges each of the foregoing allegations as if fully set forth herein.

43. Cardsmiths had valid and enforceable contracts and sales agreements with retailers large and small for the advertising, promotion, and sale of Cardsmiths' products.

44. Defendants knew of those contracts and business relationships. Their own letters were addressed and directed to the retailers and identified Cardsmiths' specific products.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

45. Defendants intentionally and improperly induced or attempted to induce those retailers to breach, cease performing, or discontinue their contracts and dealings with Cardsmiths. They did so, both before and after filing the Mantle Action, by demanding that the retailers immediately stop selling Cardsmiths' products and by threatening litigation, disgorgement, and litigation-hold obligations against the retailers.

46. Defendants acted without justification and in bad faith. They asserted intellectual property rights they knew, or recklessly disregarded, that do not cover Cardsmiths' protected expressive work, and they sought to impose a private, extrajudicial injunction rather than invoke any lawful process against the retailers. The remaining Defendants directed, authorized, and participated in this conduct carried out by Weber and the Weber Firm and are each liable for it.

47. As a direct and proximate result, Cardsmiths' contracts and business dealings were breached, disrupted, or discontinued, and Cardsmiths suffered damages of not less than several million dollars, in an amount to be determined at trial, together with punitive damages.

**Count II - Tortious Interference With Prospective Business Relations**
**<u>(Against All Defendants)</u>**

48. Cardsmiths repeats and realleges each of the foregoing allegations as if fully set forth herein.

49. Cardsmiths had existing and prospective business relationships with retailers and customers, including Best Buy, GameStop, Collector Store LLC, other national and online retailers, and small independent card and hobby shops, through which it marketed and sold the Currency Series 5 and other products.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

50. Defendants knew of those relationships and intentionally interfered with them by sending cease and desist letters directly to Cardsmiths' retailers, both before and after filing the Mantle Action, demanding that they stop selling Cardsmiths' products.

51. Defendants interfered through wrongful and improper means and for the improper purpose of injuring Cardsmiths. They made knowing misrepresentations that Cardsmiths' product infringed rights Defendants did not hold, used threats of litigation and litigation hold obligations to coerce third parties, and sought to impose a market wide cessation of sales without resort to any lawful judicial process against those third parties. Their assertions were objectively baseless and were not an honest, good faith effort to enforce valid rights. The remaining Defendants directed, authorized, and participated in this conduct carried out by Weber and the Weber Firm and are each liable for it.

52. But for Defendants' interference, Cardsmiths' business relationships would have continued and Cardsmiths would have made additional sales.

53. As a direct and proximate result, Cardsmiths lost business relationships, sales, shelf space, and goodwill, and suffered damages of not less than several million dollars, in an amount to be determined at trial, together with punitive damages.

**Count III - Declaratory Judgment of Non-Infringement, Non-Dilution, No Right of Publicity Violation, and First Amendment Protection (Against Mantle IP and MLAM)**

54. Cardsmiths repeats and realleges each of the foregoing allegations as if fully set forth herein.

55. An actual, substantial, and continuing controversy exists between Cardsmiths and Mantle IP and MLAM concerning whether Cardsmiths Mantle Card infringes or dilutes any trademark, or violates any right of publicity, owned or controlled by Mantle IP or MLAM.



EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

56. Cardsmiths seeks a declaration that the Cardsmiths Mantle Card: (a) does not infringe any valid trademark of Mantle IP or MLAM, because the asserted registrations do not cover trading cards and the card makes no trademark use of any Mantle mark; (b) does not dilute any famous mark; (c) does not violate any right of publicity; and (d) is a transformative, expressive work protected by the First Amendment, depicting a historic public figure and a historic third-party artifact.

57. A judicial declaration is necessary and appropriate to resolve this controversy and establish the parties' respective rights.

**Prayer for Relief**

WHEREFORE, Cardsmiths respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

(a) On the First and Second Causes of Action, awarding Cardsmiths compensatory, consequential, and punitive damages in an amount to be determined at trial, but not less than several million dollars;

(b) On the First and Second Counts, enjoining Defendants from further communicating with Cardsmiths' retailers and business partners to assert the intellectual property rights alleged herein, except through appropriate judicial process;

(c) On the Third Count, declaring that Cardsmiths Mantle Card does not infringe or dilute any trademark, and does not violate any right of publicity, owned or controlled by Mantle IP or MLAM, and is protected by the First Amendment;

(d) Awarding Cardsmiths its costs and attorneys' fees to the extent permitted by law; and

(e) Granting such other and further relief as the Court deems just and proper.

**Demand for Jury Trial**

Cardsmiths demands a trial by jury on all issues so triable.

Dated: October 28, 2026

Respectfully submitted,

/s/Evan Benjamin Berger

Evan Benjamin Berger
Evan Berger Law PA
4800 North Federal Highway
Suite B200
Boca Raton, Florida 33431
Telephone: 954-380-4343
Email: evan@bergerlawpa.com

*To be Admitted Pro Hac Vice on Behalf of Plaintiff Cardsmiths, LLC*